

U.S. DISTRICT COURT - N.D. OF N.Y.

**FILED**

OCT 2 2 2020

AT_____ O'CLOCK_____
John M. Domurad, Clerk   Syracuse

*In the* United States District Court
For the Northern District of New York
---------------------------------------------------------

In the Matter of Application of
Howard Griffith & Rebecca Sklaney, et al.,
Plaintiffs

-against-

New York State, et al.,
Respondent.

For a Judgment Pursuant
42 U.S. Code Section 1983
---------------------------------------------------------

Order to Show Cause and Temporary
Restraining Order in Concert with
42 U.S. Code Section 1983

Civil Action No.: S:20- Cv- 1312(GLS / ML)

Upon the annexed affidavits of Petitioners, Howard Griffith and Rebecca Sklaney, the Plaintiffs
in the matter proposed above, upon the exhibits attached thereto and the memorandum of law
with regard to this matter:

LET the [Respondents] of this matter (U.S. Code Annotated Title 52, Voting and Elections: 52

U.S. Code 10303, "Suspension of the Use of Tests or Devices in Determining Eligibility to Vote"

subjective to the liabilities of [New York State]; and U.S. Code Annotated Title 13, Census: 13

U.S. Code Section 223, "Refusal, by Owners, Proprietors, etc., to Assist Census Employees"

subjective to the liabilities of [Jan Nastri]) show cause before this Court on the _____ day of

_____, 2020, at the time of _____, on that day, why preliminary injunction should

not issue pursuant Rule 65(a) of the Federal Rules of Civil Procedure enjoining the Respondents,

their successors in office, agents and employees and all other persons acting in concert and

participation with them, any injunction which prohibits the parties' authorities to object that there

is no good reason for this matter to be heard, objecting any cause why the Plaintiffs can contest

how the [perpetration], (the [actions] deemed to be have been a liability of the Respondents)

described in the Affidavit attached hereto provides a cause to interpret the negligent or willful

procedure taken provides merit that Petitioners' guaranteed rights to vote are being contravened

with; and why the interpretation of law described, which would apply to identical perpetrations which would affect separate parties, would have merit to provide any people's guaranteed rights to vote would be deemed to be contravened with.

**IT IS ORDERED** that the interpretation provides the cause for corrections be made with regard to these addressed errors.

**IT IS FURTHER ORDERED** effective immediately, a restraining order be provided to afford Plaintiffs are not to be subject to any conditions which are deemed to be dangerous, hazardous, or detrimental to their life, health or safety, on the property they reside pursuant to NY Real Property Law Section 235-b, as it applies to the most fundamental remedy precedented and described which had resulted in the success of the process to provide this action can now be taken.

**IT IS FURTHER ORDERED** that this Order to Show Cause and all other papers attached to this application be served to the judicial representative of New York State and Jan Nastri by the _____ day of _____, 20_____.


Dated:                                                    _____

                                                          United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------

Howard Griffith & Rebecca Sklaney,                42 U.S. Code Section 1983
*Plaintiffs*                                      Affidavit and Memorandum

                            vs
                                                  Civil Action No.:

New York State,
*Respondents*
----------------------------------------------------------------
STATE OF NEW YORK)
COUNTY OF ONONDAGA)ss.:


The Application of Howard Griffith, being identified as "Petitioner" and Rebecca Sklaney, as an

additional Petitioner to only be identified, jointly, in limited areas of this Application with

Howard Griffith as the Plaintiffs in this action will be jointly identified as "Tenants" (in those

limited areas, [generally], identified), respectfully address how due process can identify a

perpetration subjective to what can be defined as tests or devices pursuant to 52 United States

Code Section 10303(c) need to be eliminated pursuant to 52 U.S. Code Section 10303(a)(2) as

due process provides this Court can make that Declaration, via special proceeding, to have an

interpretation made to afford tenants will not be denied their Constitutional Rights pursuant to

the 5th, 9th, 10th, and 14th Amendment Rights of the United States Constitution.


**Preliminary Matter**

[Remedies] have been exhausted as the action taken by Petitioner pursuant to New York Civil

Practice Laws and Rules Article 78 **(SU-2020-005851)**, as a special proceeding, in a Supreme

Court of the Fifth Judicial District, with Order to Show Cause, taken on September 16, 2020,

meant to have been taken to obtain Orders for Onondaga County to correct errors of law and

provide law enforcement for Petitioner, [n]eed to be reviewed first to interpret why the Declaratory Judgment now needs to be provided via judgment pursuant to 42 U.S. Code Section 1983, as part of the cause has been supported that a Supreme Court of the Fifth Judicial District of New York State has still not provided a decision for the Order to Show Cause as of this date as this special proceeding needs to be reviewed first:

**Howard Griffith, *Plaintiff*, vs Onondaga County, *Respondent*, SU-2020-005851:**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ONONDAGA
------------------------------------------------------------------

| | |
|---|---|
| Howard Griffith, <br> *Petitioner,* <br><br>     vs <br><br> Onondaga County <br> *Respondent.* | CPLR Article 78 Petition Taken in the <br>  Nature of Certiorari for Mandamus to <br> Compel <br><br> Index No.: **SU-2020-005851** |

------------------------------------------------------------------

"The petition of Howard Griffith, complaining of Onondaga County, respectfully addresses how due process provides a previous determination in a criminal proceeding in which he was convicted for, upon which the developed remedy has intentionally not been satisfied by the county ([specifically] failing to prevent Petitioner's previous defense from developing merit), has established the fundamental basis upon which this action can be addressed via special proceeding:

### Preliminary Statement

**"1)** Petitioner, Howard Griffith, is witness to outrageous criminal activity on the property upon which he shares a policy with Jan Nastri at 2817 James Street, Syracuse, NY 13206 (Eastwood

2

Office Building I) upon which are the grounds for the trash services provided for his housing address: 2903 James Street, # 1R, Syracuse, NY 13206 (Eastwood Office Building II), upon which the trash services can be deemed as a necessary utility for his [dwelling].

**'2)** Petitioner has definitively witnessed the lots behind the Eastwood Office Buildings to be grounds for the exchange of narcotics for the past four years of his dwelling as the entrance/exit of his apartment is located in the rear of the Eastwood Office Building II, and more recently, much more outrageous crimes.

**"3)** Petitioner attempted to give his report to an officer of the Onondaga County Sheriff on July 27, 2020, and the officer completely rejected it and accused him of having psychiatric issues. DR 20-368307

### Nature of the Proceeding

**"1)** On May 18, 2018, Petitioner contacted the Syracuse City Police Department in complaint of loitering on the steps outside of his bedroom window. DR 18-290076 He also contacted his landlord, Jan Nastri, in complaint. No action was taken for this complaint.

**"2)** On June 23, 2019, Petitioner attempted to take his own personal actions to make some young females in a car leave the lot in the rear of Eastwood Office Building II as he claimed they were invading the privacy ahead of the entrance of his apartment door. Petitioner's actions ended with damages to the car. He was arrested for Criminal Mischief in the Fourth Degree, NY Penal Law Section 145.00(1). DR 19-338537

**"3)** Petitioner was prosecuted in the Syracuse City Court in the presence of Justice Limpert with a representative from the office of the Onondaga County District Attorney representing the People. CR-10842-19

**"4)** Criminal Mischief in the Fourth Degree, NY Penal Law Section 145.00(1) states: "A person is guilty of criminal mischief in the fourth degree when, having no right to do so nor any reasonable ground to believe that he or she has such right, he or she: intentionally damages property of another person."

**"5)** Petitioner used his loitering complaint from May 18, 2018, DR 18-290076, as his fundamental cause to attempt to develop the merits for his reason to believe he had the right to damage the vehicle in the lot on June 23, 2019, while providing further cause, debating his landlord violated the Warranty of Habitability, Real Property Law § 235-B: "In every written or oral lease or rental agreement for residential premises the landlord or lessor shall be deemed to covenant and warrant that the premises so leased or rented and all areas used in connection therewith in common with other tenants or residents are fit for human habitation and for the uses reasonably intended by the parties and that the occupants of such premises shall not be subjected to any conditions which would be dangerous, hazardous or detrimental to their life, health or safety. When any such condition has been caused by the misconduct of the tenant or lessee or persons under his direction or control, it shall not constitute a breach of such covenants and warranties." Petitioner claimed that the policy with his landlord provided that his residence was for the use of his "private [dwelling]" and the invasion of privacy would be deemed dangerous, hazardous or detrimental to his life, health or safety. Petitioner contested that just as the actions addressed with regard to loitering on May 18, 2018, were of concern because it applied to the invasion of the security of his privacy, it provided reason for him to believe he could challenge the people in the car in the lot outside of his apartment to leave because the Syracuse City Police and his landlord did not provide enforcement for the former.

"6) Petitioner attempted to address this in a Motion to Dismiss Charges, Motion to Dismiss

Accusatory Instrument, and Motion to Dismiss Case. However, the Onondaga County District

Attorney repeatedly answered that his motions were "ludicrous" simply based on the facts that

proved he had caused the damages to the property and they needed to be addressed in trial.

Nevertheless, it is not a jury's duty to decide merits of law as the reason to believe Petitioner had

the right to cause damage to the property would have been with regard to the merits. However,

the settlement of the prosecution resulted in disorderly conduct, NY Penal Law 240.20, entirely

on the facts that petitioner had damaged the property and reimbursement was required along with

an order of protection for the female who was present in the driver's seat of the vehicle.

Nevertheless, the determination provided that there was no reason to believe Petitioner had

provided a good, fundamental cause to support a reason to believe he could cause the damages to

the property with regard to authorities not enforcing the former in satisfaction of the People's

contest that his reasons were "ludicrous". Nevertheless, this determination needs to be considered

that the Onondaga County District Attorney provided the confirmation that if Petitioner was ever

subject to conditions upon which he believed would be deemed "dangerous, hazardous or

detrimental to his life, health or safety" with regard to the policy provided by his landlord, which

may involve criminal intent, he could call the police. It needs to be deemed that the lot of the

"Eastwood Office Building I" is provided by the landlord as a part of his policy for his trash

services to maintain the [dwelling] of his residence. Just as the Onondaga County District

Attorney represented the People in the City of Syracuse, the Onondaga County Sheriff has

jurisdiction to enforce law in the City of Syracuse. DR 20-368307 (CPLR 7802)

"7) Without the Onondaga County Sheriff respecting this determination, due process provides

this "information [ ]" could have been provided via special proceeding to include a declaration

5

in case future actions needed to have been taken in the case he believes the current property he resides involves conditions which he considers may be deemed "dangerous, hazardous or detrimental to his life, health or safety" with regard to the Points presented in paragraphs (1) through (6) as the nature of the cause would have been in reference to:

**A)** Recent bills passed by the New York State Legislature and signed by Governor Cuomo on June 12, 2020, made it difficult for Petitioner to attempt to describe his complaint DR 20-368307 because the procedure was established with a 911 emergency call and he did not know if describing the perpetrators as African-American males could have him punished for a hate crime. Ignorance cannot be used as a defense.

**B)** It is too hard to presently study the bills to determine if there have been any statutory codes that have gone into effect, how it may affect any present proceedings and if there is a possibility for any retroactivity because the executive orders of Governor Cuomo with regard to the COVID-19 pandemic have resulted in the law library being closed in Onondaga County. Nevertheless, ignorance cannot be used as a defense.

**C)** It is important for Petitioner to address this via a special proceeding as due process has helped him obtain this right, and with this present in the court, scrutiny can be obtained to provide the court the opportunity to understand why he believed it was necessary to address this complaint because with more and more laws being established to determine a broader range of what can be interpreted as an abuse of freedom of speech, Petitioner feels that he has safely addressed this complaint in court to be provided for law enforcement. Contacting authorities has repeatedly seemed extremely confusing and difficult. Syracuse City Police: DR 20-16385 (Officer Goode accused Petitioner that it was his own fault for being held up atop of the steps at the entrance of his apartment with a knife by an intruder, making his own personal assumption of what actually

6

happened, while insulting Petitioner.); DR 20-222496 (JHY 1651, Chevy Altima: An African American male was parked in the car next to the steps of the Petitioner's residence smoking marijuana and counting hundreds of dollars. He left before the police could respond and no report was taken.)

**D)** Petitioner feels threatened because he has noticed attempts to invade the privacy of his phone as he has never known of these kinds of attempts in the past. Petitioner made a 911 complaint of a male in a red vehicle dealing drugs in the parking lot behind his apartment in April, 2020. The Syracuse City Police removed the license plates and left the vehicle in the parking lot. The vehicle was removed from the parking lot following an emergency response between the Eastwood Office Buildings on June 9, 2020. The vehicle was moved back to the parking lot on the weekend of August 1, 2020, without any license plates. Also, Petitioner has epilepsy. Petitioner has not smoked marijuana in eighteen years. Petitioner received a "buzz" after smelling what he believed to be ducksfoot hybrid cannabis while taking out his trash on the night of July 27, 2020, after speaking to the sheriff, and later that night he had a seizure.

**"8)** Nevertheless, Jan Nastri, provided a settlement with regard to his concerns and causes presented in Points (1) through (7). The settlement was with regard to the cause with regard for the cause with the satisfaction of having the vehicle parked near the entrance/exit of his apartment, the vehicle identified with the proposed cause on August 1, 2020 through August 14, 2020, being moved near the location of what he believed to be ducksfoot hybrid cannabis near the space provided for the services of what is believed to have been ducksfoot hybrid cannabis near the space provided for the services of his trash utility. This satisfied what was supposed to have been a proposed CPLR Article 78 draft, with a proposed order to show cause, signed on the 14th day of August, 2020, without verification, with regard to what was presented in Points (1)

through (7) with the inclusion of the first information presented below, in this petition. This was supposed to satisfy his concerns for Warranty for Habitability, NY Real Property Law Section 235-B, as Petitioner's intended action was not to have been taken because of the satisfaction for the settlement upon which he agreed with Jan Nastri provided he would not be subjected to any conditions which would be dangerous, hazardous or detrimental to his life, health or safety.

**"9)** Nevertheless, new precedent has been established as the provision of a census with the posting for 2903 James Street Apt. 5, with the Census ID: 9CKV-VYX5-89KP, was provided at his mailbox as there wasn't a previous address of 2903 James Street, Apt. 5, upon information and belief. There was also a letter with regard to a request for address correction provided without being addressed to any individual or individuals on the enclosed package of the letter, required to be corrected by Jan Nastri, as there was reason to believe this provided a cause for a grounds for the amendment of Petitioner's address. (see attachments) Petitioner did not know if this had substance for error of law as he attempted to provide it for his Sex Offender Registry pursuant to NY Correction Law Article 168 with the Syracuse City Police Department on September 14, 2020, for remedy. However, the Syracuse City Police would not accept the provision and amended his address without providing an apartment number with objecion (see attachment). Therefore, Petitioner provides this for cause that he intends to amend his address to 2903 James Street, Apt. 5, Syracuse, NY 13206, to provide the remedy for further declaration that the conditions of the property provided by Jan Nastri may be deemed [dangerous] to his [life] regarding any lack of liberty or provision of prejudice with regard to the liberty and justice the premises provided by Jan Nastri may interfere with regarding his sex offender registry pursuant to "People v Griffith, 2001-0883-1". It needs to be deemed Jan Nastri had violated the settlement with regard to Warranty for Habitability, NY Real Property Law Section 235-B, as

8

these proceedings are necessary to establish precedent for any remedy that may need to be

provided for the defense of any possible errors regarding a provision of an invalid address for the

purpose of sex offender registry."

## NY CPL 100.10 [ ]

"It was on the weekend of July 10, 2020, when I was seated at the entrance of my apartment in

the back lot when an African American, male stranger pulled into the lot of my residence with an

additional, female passenger, and he asked me where the address was of the Eastwood Office

Building I, and I referred to him across the road. I continued to relax at the entrance of my

apartment when I witnessed five additional African American, male strangers pull up and step

out of a gray sports utility vehicle at the lot at the same time that he did. I then recognized that

they greeted an older African American male whom I have witnessed being one of the few

people with access to that building for several months. I then noticed how the strangers kept

observing me out of concern unlike any of the other strangers who have performed their

exchange of narcotics at that lot over the past four years. I then witnessed them observing the

plants growing behind the dumpster, on the wall. It was the following morning when I had taken

out my trash and observed what appeared to satisfy the characteristics of ducksfoot hybrid

cannabis upon information and belief. It was during the following weekend on the night of July

18, 2020, when the lots behind the buildings were closed, with a new coating of pavement placed

on them, when I observed the strangers with the older African American male set outside of the

rear entrance. The black car owned by the older African American male was parked at a corner

of the road next to the lot of the apartment upon which I reside. He was still set outside when I

witnessed the alarm for his car set off for a brief moment before he turned it off as there was

nobody next to the vehicle. Afterwards, the trunk to his vehicle was opened by remote control

before he stepped inside with his guests. I continued to observe with my interest before I noticed an African American male drive past the vehicle while he beeped his horn. I observed in maintenance of interest, in opposition to boredom, as the trunk was not attended to for hours. I recognized different individuals who I had witnessed enter the building with the older African American male step out of the building several times over that course of time to smoke cigarettes. It was later, when a silver car arrived, when an African American male stepped out of the vehicle in what appeared to be confusion and concern while the other African American males approached him as the older African American male approached his black car and closed the trunk. After the trunk was closed, they began walking back to the building, as they appeared to stutter and one of the males addressed the male who had just stepped out of the vehicle, "Are you coming up?" About ten minutes later, they came back out and approached the corner of the end of the building on the opposite end of the segment of the parking lot where I sat, the end of the segment opposite of the back corner of the parking lot, the corner next to the road. The lot was empty as four of the males stood about ten yards from me with their backs turned to me in what appeared to be an attempt to shield me from viewing around the corner as they viewed around the corner in what appeared to be a nervous state and that's when I heard what appeared to be a large object transferred from one vehicle to the next. After that, they went back across the road and entered the building in what appeared to be relief.

The following week, I witnessed a lot of people attending the building in what appeared to be new tenants obtaining office space. I also noticed that all of the people had documents which appeared to be some kind of a license. Jan Nastri, the landlord, was also attending the building as he may have been attending to preparations for his new tenants. The new tenants witnessed my observation in what most likely appeared to be with their upset upon information and belief.

10

The following weekend, I was sitting on the steps at the entrance to my apartment, speaking to my roommate, Rebecca Sklaney, when I witnessed the older African American male communicating with me with what appeared to be gestures upon information and belief. I later observed the new sticker on the window of the entrance of the Eastwood Office Building I, and I read that the office space was being used for armed security services.

On July 27, 2020, I felt threatened by the observation of people at the building and I left with my roommate and attempted to contact 911 at Burger King on Thompson Road in the Town of Dewitt. DR 20-368307."

### Nature of the Cause

**"A)** Recent bills passed by the New York State Legislature and signed by Governor Cuomo on June 12, 2020, made it difficult for Petitioner to attempt to describe his complaint DR 20-368307 because the procedure was established with a 911 emergency call and he did not know if describing the perpetrators as African-American males could have him punished for a hate crime. Ignorance cannot be used as a defense.

**"B)** It is too hard to presently study the bills to determine if there have been any statutory codes that have gone into effect, how it may affect any present proceedings and if there is a possibility for any retroactivity because the executive orders of Governor Cuomo with regard to the COVID-19 pandemic have resulted in the law library being closed in Onondaga County. Nevertheless, ignorance cannot be used as a defense.

**"C)** It is important for Petitioner to address this via a special proceeding as due process has helped him obtain this right, and with this present in the court, scrutiny can be obtained to provide the court the opportunity to understand why he believed it was necessary to address this complaint because with more and more laws being established to determine a broader range of

11

what can be interpreted as an abuse of freedom of speech, Petitioner feels that he has safely

addressed this complaint in court to be provided for law enforcement. Contacting authorities has

repeatedly seemed extremely confusing and difficult. Syracuse City Police: DR 20-16385

(Officer Goode accused Petitioner that it was his own fault for being held up atop of the steps at

the entrance of his apartment with a knife by an intruder, making his own personal assumption of

what actually happened, while insulting Petitioner.); DR 20-222496 (JHY 1651, Chevy Altima:

An African American male was parked in the car next to the steps of the Petitioner's residence

smoking marijuana and counting hundreds of dollars. He left before the police could respond and

no report was taken.)

**"D)** Petitioner feels threatened because he has noticed attempts to invade the privacy of his

phone as he has never known of these kinds of attempts in the past. Petitioner made a 911

complaint of a male in a red vehicle dealing drugs in the parking lot behind his apartment in

April, 2020. The Syracuse City Police removed the license plates and left the vehicle in the

parking lot. The vehicle was removed from the parking lot following an emergency response

between the Eastwood Office Buildings on June 9, 2020. The vehicle was moved back to the

parking lot on the weekend of August 1, 2020, without any license plates. Also, Petitioner has

epilepsy. Petitioner has not smoked marijuana in eighteen years. Petitioner received a "buzz"

after smelling what he believed to be ducksfoot hybrid cannabis while taking out his trash on the

night of July 27, 2020, after speaking to the sheriff, and later that night he had a seizure.

**"E)** The provision of a census with the posting for 2903 James Street Apt. 5, with the Census ID:

9CKV-VYX5-89KP, was provided at the mailbox as there wasn't a previous address of 2903

James Street, Apt. 5, upon information and belief. There was also a letter with regard to a request

for address correction provided without being addressed to any individual or individuals on the

enclosed package of the letter, required to be corrected by Jan Nastri, as there was reason to believe this provided cause for a grounds for the amendment of Petitioner's address and this established precedent that the grounds for Warranty for Habitability has been violated.

**"WHEREFORE,** Petitioner respectfully requests, with regard to the remedy developed with the determinations made in the Syracuse City Court in the presence of Justice Limpert DR 19-338537; CR-10842-19 and with regard to the police report he intended to have made by the Onondaga County Sheriff DR 20-368307, and had failed to satisfy the remedy, that in order to satisfy the remedy, that judgment be entered pursuant to Article 78 of the Civil Practice Laws and Rules:

ORDERING this "information [   ]" be taken by Onondaga County with this verification to be provided for the purposes of enforcement of the law.

GRANTING such other relief as the Court may deem just and proper."

It now has been reviewed how "**Howard Griffith, *Plaintiff*, vs Onondaga County, *Respondent*, SU-2020-005851",** can be provided as an exhausted remedy to take this action:

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICE OF NEW YORK
----------------------------------------------------------------------

Howard Griffith & Rebecca Sklaney,
*Plaintiffs*

                            **vs**

New York State,
*Respondents*
----------------------------------------------------------------------

### Nature of the Proceeding

**(1)** Warranty for Habitability initially satisfied "Information" from not being provided for the courts as Petitioner had attempted to have it provided on July 27, 2020 for the police: **DR 20-368307**; however, without the police respecting his authorization (as was provided with **CR-10842-19** by the City of Syracuse Court and the Onondaga County District Attorney) to have these issues addressed, this provided a remedy was exhausted to take action via special proceeding. Nevertheless, Petitioner settled this as an arbiter, settling the possibilities of any disputes on behalf of the perpetrators described in the "information" and Jan Nastri as long as it was maintained Petitioner was not to have been denied Warranty for Habitability, NY Real Property Law Section 235-b. This meant that Warranty for Habitability was to have continued to have been met in concert with Petitioner's cause for concerns, as they applied to the ["Information"], with Petitioner's agreement to not provide [it] for the courts. However, Petitioner addressed the settled dispute would no longer have merit if he was denied Warranty for Habitability by Jan Nastri, substantively, with regard to any new perpetration violating any of Petitioner's additional, existing remedies that apply to the policy. This is because Jan Nastri is

14

liable for all of these disputes with regard to how Warranty for Habitability applies to his written policy, while the policy was being obeyed by Petitioner.

(2) Part of the "cause" that Petitioner provided with regard to being concerned he would have to have taken the action via special proceeding, if Warranty for Habitability was violated, should be necessary to be provided as the "nature of the proceeding" to take this action rather than the "nature of the cause" as this also applies to the Arbitration. This was with regard to the "cause" Petitioner was concerned with to provide it was necessary to take action via special proceeding, in reference to being concerned about telling the police, when contacting 911 on July 27, 2020, that the perpetratorS were "African American" males as was provided in the "Information". He provided that the bills signed by Governor Cuomo on June 12, 2020, made him concerned about being arrested for a "hate crime" by describing the Perpetrators as "African American" males. He was concerned because he was not able to interpret these bills and with the Executive Orders of Governor Cuomo, with regard to the COVID-19 pandemic, the law library had been closed down. "Nevertheless, ignorance cannot be used as a defense." Petitioner described how he had made a complaint, presented as part of his "cause" why it was necessary to have brought his actions to courts being Warranty for Habitability was not respected: **DR 20-222496**. (JHY 1651, Chevy Altima: *An African American male was parked in the car next to the steps of the Petitioner's residence smoking marijuana and counting hundreds of dollars. He left before the police could respond and no report was taken.*) This has merit that authorities were not respecting Petitioner's concerns as he believed it was necessary to describe the perpetrator as being an "African American" male. However, with regard to the condition of describing the perpetrator as an "African American" male, this remedy ["alone"] does not have enough

15

substance to be exhausted, subjective to Petitioner's described concerns of the [described] signatures of bills and the [described] executive orders of [Governor Cuomo]. Nevertheless, Petitioner addressed this to Syracuse City Hall, via email, relative to what he was concerned about with regard to the COVID-19 pandemic, addressing this complaint that a "black" male was [at] his doorsteps, smoking marijuana, and because he was just within six feet away (about the same distance the marijuana smoke was reaching his steps from the car), this provided merit that he was being a subject of being at risk of COVID-19, in violation of how he was supposed to be protected from people disobeying social distancing, as this is what he addressed on April 06, 2020:

"I tried to make a complaint to the police about a guy who has been loitering on my doorstep as I feel like I am a victim of a negligent response to social distancing. The police said there could not be a response with regard to the person being there as I could not prove he was there. Therefore, the police said that they could not respond. I don't want to have the risk of being a victim of COVID-19. Whether I can prove he was there or not, why can't the police just suggest to him that if he was there, don't go there anymore? He has no cause to be there as he does not live here. I live here. If the police address him, he'll most likely conclude he had better not come back here, and everybody will ["Be Safe"] with regard to the situation I am addressing. The County Executive said that people can address authorities for concerns with regard to being victims to negligence with regard to social distancing. I tried to give the police the information: He was a young black male with a short-faded, box-cut haircut. He appeared to be about eighteen years of age. He drove away in a silver Chevy Altima with a license plate number: JHY 1651. My name is Howard Griffith. I reside at 2903 James St, Apt. 1R, Syracuse, NY 13206. I contacted the Syracuse City Police Department at about 4:30 pm on this date (April 06, 2020) and the DR No. was DR 20-222496."

The deputy administrator of Syracuse City Hall brought this to the attention of the Syracuse City

Police Department, and a deputy police chief responded on April 13, 2020, via email:

"Hi,

"My name is Deputy Chief Trudell and I work for the Syracuse Police Department. You recently

sent an email (below) to the Mayor of Syracuse with your concern about the lack of social

distancing.

"I wanted to let you know that we are taking this issue very seriously. In the future, I encourage

you to continue to call 911 and report this type of activity when you are experiencing it. This

will allow our officers to respond and handle the call accordingly."

(*see* attachment)

Therefore, this provides that it can be deemed the Administration of the City of Syracuse also

authorized Petitioner to contact 911 in the case of being under the concern of activity involving

any [black] males whom he feels may put him under a threat which he may deem to be

dangerous, hazardous or detrimental to his life, health or safety on the property he resided on.

The City of Syracuse, the County of Onondaga, and New York State all agreed during the month

of April, 2020, that conditions with regard to not practicing social distancing provided great risks

of putting people under a threat which may have been deemed as dangerous, hazardous, or

detrimental to people's life, health or safety. This has merit because it was the administration of

the City of Syracuse which authorized a deputy police chief to provide the authorization for

Petitioner. Therefore, it can now be satisfied this remedy has been exhausted, retroactive to

provide this as the new most fundamental remedy, subject to the remedies that were still being

exhausted when the attempt was made to have a police report taken on July 27, 2020, **DR 20-**

**368307**. However, this remedy was taken as the "Nature of the Cause" with the action taken

pursuant to CPLR Article 78. **(SU-2020-005851)** Therefore, this provides the cause that this will have to be taken as the "Nature of the Proceeding" with a new action pursuant to 42 U.S. Code Section 1983.

**(3)** Petitioner provided supplement for his action pursuant to NY CPLR Article 78 **(SU-2020-005851)** on September 17, 2020, (the day after he obtained the index number) with the mail he found in his mailbox that previous evening attached: ( **[1]** Onondaga County Board of Elections: "Absentee Vote" to the voter at 2903 James St., 1R, Syracuse, NY 13206 [the traditional address on Petitioner's policy.] **[2]** Coupons addressed to Laura Nassar, 2903 James St., Apt 1R, Syracuse, NY 13206-2127 [an unknown person whom has never resided with Petitioner] **[3]** United States Postal Service to Postal Customer at 2903 James St, Apt 5, Syracuse, NY 13206 [notice with regard to voting by mail] **[4]** United States Postal Service to Postal Customer at 2903 James St, Apt 1, Syracuse, NY 13206 [notice with regard to voting by mail]) claiming these were substantive to the issues he addressed with his action. This provided merit that there were more errors with regard to Petitioner's address, regarding his traditional address including an additional, unknown person in his household. This provided further cause for the census for 2903 James St., Apt. 5, being improperly provided [for his sex offender registry] and [for] the commencement of the special proceeding to have been taken to have this corrected, via law enforcement, by Onondaga County. It could have been deemed necessary to have taken this action, via special proceeding, in improper form, because without creating this procedure to have this error corrected, it could have resulted in Petitioner being subject to Penalties pursuant to NY Correction Law Section 168-t. (Correction Law Article 168, Sex Offender Registration Act [SORA]) This was made to have been taken because Jan Nastri was supposed to preserve

18

Warranty for Habitability in connection with the Arbitration. However, with what Petitioner concluded with the Arbitration, with regard to any additional, existing remedies that applied to the policy, new perpetration violating any of these remedies would once again be deemed to have violated Warranty for Habitability, to complete the process that this would have to be corrected via special proceeding. The address provided by Jan Nastri is the most important part of the policy. It was now to have been deemed important to take this action, via special proceeding, because the errors with regard to the address provided may have put Petitioner in jeopardy of being subject to legal prejudice or injustice. Petitioner's action also was necessary to protect himself from the court.

**(4)** With the described action taken pursuant to NY CPLR Article 78, **(SU-2020-005851)**, Petitioner proves how he was able to preserve his right to provide the contest with regard to the [described] signatures of bills and the [described] executive orders of [Governor Cuomo] to be taken as the "nature of the proceeding" for this action. Still however, Petitioner concluded his statement on August 24, 2020, as an Arbiter: "The Civil Action I was prepared to take currently has no merit unless new precedent is established, and if I were to presently amend the Civil Action, it might get me into trouble." Therefore, this supports that with Petitioner improperly providing the census referring to 2903 James St., Apt. 5, for his Sex Offender Registry, this can no longer be deemed as a new precedent to have developed the procedure to take action via special proceeding. This can no longer be provided because, now, taking this action on a new fundamental remedy is consequential to the improper provision of the 2903 James St., Apt. 5 census, improperly being provided for Petitioner's Sex Offender Registration.

19

**(5)** Nevertheless, with the action taken based on concerns provided with regard to errors of his address and household, Petitioner supports that the evidence presents broad circumstances which could provide the development of both his right to vote and his roommate's, Rebecca Sklaney's, right to vote being thwarted.

## Nature of the Cause

**I)** The signature of Governor Cuomo on a bill dated June 12, 2020, established precedent that it could have been deemed Petitioner was in the phase of being subjective to being a victim of what may have been said to have been a hate crime, to be a victim of what can possibly be considered as a hate crime pursuant to 34 U.S. Code CHAPTER 305---HATE CRIMES § 30505 Severability, on July 27, 2020, as Petitioner could not interpret if he would have been subject to being prosecuted for a hate crime pursuant to Articles provided under NY Penal Law and NY Criminal Procedure Law if he had notified authorities with the process of describing the Perpetrators as "African American" males being the executive orders of Governor Cuomo with regard to the COVID-19 pandemic had caused the law library to be closed. "Ignorance cannot be used as a defense." However, it was the Arbitration between Jan Nastri and any of the Perpetrators described in the "Information" which was meant to settle the possibilities of any disputes between those parties to maintain the security that Petitioner would not be deemed to be a victim of any conditions which may have been deemed to have been dangerous, hazardous or detrimental to his life, health or safety which were to include any conditions of being a victim of a hate crime pursuant to § 30505 "severability" as it applies to Warranty for Habitability, Real Property Law Section 235-b, subjective to what he was concerned he may not have been safe enough to address to authorities with regard to the bills signed by Governor Cuomo on June 12,

2020. Nevertheless, Jan Nastri has violated Warranty for Habitability making Petitioner and his roommate, Rebecca Sklaney, victims of his additional perpetration, negligently or willfully being the proprietor of his tenants, by erroneously working to have the census provided and collected on his property to have developed the construction of consequences upon which tenants are subject to being denied their right to vote. These tests or devices, provided by Jan Nastri, interfere with tenants' rights to vote on account of being white, caucasian Americans without there being contravention of the guarantees (of what is to be the [described] language minority group) rights to vote set forth in subsection (f)(2) of 52 U.S. Code Section 10303, with regard to the evidence being provided that tenants' votes were actually being preserved for people falling within the category of a language minority group. These are errors because any people deemed to be at a location improperly identified with regard to any census or household and which was meant to have been a location to have been provided, properly, as an actual address or to have been provided with regard to a correct, actual household should not be guaranteed the rights to the votes which were supposed to have been guaranteed to the people who actually resided at the properly identified address, composed with the properly identified household.

**II)** Just as much as one may consider an illegal vote taken adds to the count, it should also be considered how it negates one vote that was legally taken, subtracting it from the count which can be deemed to affect white, caucasian Americans the most since white, caucasian Americans make up the majority of the United States population. Merit provides that these procedures, with regard to the census and mail in ballots being provided for residents who do not actually reside within an actual household or at an actual address, can be deemed as tests or devices that have an effect to deny or abridge the rights of tenants, being denied their rights to vote as white,

21

caucasian American's, as it is contravened because of [guarantees] for the language minority group [described] to not have their authority to vote interfered with as set forth in subsection (f)(2) of 52 U.S. Code Section 10303, should not be [guaranteed] that right. These rights should not be guaranteed to people within a language minority group based on the remedy that these are not actual addresses nor actual residents of actual households as these should not be able to be afforded to take the votes of actual addresses and actual households whom the majority of these actual residents of actual addresses are made up of white, caucasian Americans being the makeup of the majority of the United States population. Pursuant to 52 U.S. Code Section 10303(d), New York State is liable for authorizing these tests or devices to be used in account of denying or abridging white, caucasian Americans' rights to vote with the contravention of 52 U.S. Code Section 10303(f)(2) by [guaranteeing] people within a language minority group [described] the right to vote when [a group of people falling within this category] should not even be [guaranteed] that right, as New York State needs to be deemed liable for not holding Jan Nastri accountable for these offenses pursuant to 13 U.S. Code Title 13—CENSUS 13 U.S. Code § 223.

**III)** Declaratory Judgement needs to be provided pursuant to 52 U.S. Code Section 10303(a)(2) to interpret the procedures described in the closing points have the merit to establish precedent that New York State can be held accountable for white, caucasian Americans having their rights to vote interfered with on account of the perpetration that Jan Nastri negligently or willfully has been the proprietor of tenants and has erroneously worked to have the census provided and collected on his property to have developed the construction of consequences upon which his tenants are denied their right to vote. This perpetration is being deemed to be legal because,

22

equivocally, what can be described as a test or device, pursuant to 13 U.S. Code Section 223, cannot be considered to contravene with what is believed to satisfy the rights guaranteed to vote for people falling within the category of a language minority group [described], pursuant to the authorization [described] which was deemed to have preserved this authority pursuant to 52 U.S. Code Section 10303(f)(2), upon which these tests or devices actually makes it easier for [them] to vote. Nevertheless, Because of the [guarantees] [described] for the members of the language minority group [described] to not have their authority to vote interfered with pursuant to subsection (f)(2) of 52 U.S. Code Section 10303, it interferes with white, caucasian Americans' rights to vote with the contravention of subsection (f)(2) of 52 U.S. Code Section, because the members of the [described] language minority group should not be [guaranteed] the right to vote as it applies to the conditions described. This violates legal voters' rights pursuant to the 5th, 9th, 10th, and 14th Amendment Rights of the Constitution of the United States. Also note how this can affect the rights to vote for legal voters of other ethnic backgrounds, besides just caucasian American's, as well.

**IV)** Further declaration needs to be provided that due process satisfies the cause that these tests or devices need to be eliminated as these issues have not been promptly and effectively corrected as this evidence was provided with a Nature of Certiorari for Mandamus to Compel with Order to Show Cause, with an action taken as a special proceeding pursuant to NY Civil Practice Laws and Rules Article 78, **SU-2020-005851** with regard to how these tests or devices were the remedies to be provided for corrections to have been made by Onondaga County for Petitioner's Sex Offender Registry as it was important to understand how these tests or devices could have caused substantive errors with regard to the requirement to provide information of changes in

23

address or household pursuant to NY Correction Law Article 168, Sex Offender Registration Act

(SORA), as the failure of a Supreme Court of New York State within the Fifth Judicial District to

provide a decision for an Order to Show Cause since September 16, 2020, can be interpreted as

not being promptly and effectively corrected by State or Local Officials as corrections by

Onondaga County being succeeded upon an Order of the Judicial Branch of New York State to

correct these errors to provide Petitioner would not be subject to Penalties pursuant to NY

Correction Law Section 168-t, would have automatically included corrections being made as

were described under 52 U.S. Code Section 10303(d), and further cause is provided this will be

extremely substantive with regard to the election results of 2020.


**V)** Law enforcement must also be provided with regard to the concerns described within the

"Information" provided with the remedy via NY Civil Practice Laws and Rules Article 78 **(SU-**

**2020-005851)** to provide that Petitioner and his roommate will not a victim to any conditions as

residents on the property of Jan Nastri which may be deemed as dangerous, hazardous, or

detrimental to his or her life, health or safety.


**WHEREFORE,** Petitioner respectfully requests Declaratory Judgment be provided that the

perpetration described, ambiguously, can be used to interpret an established precedent that white,

caucasian Americans are being denied their rights to vote with the contravention providing how

the authorization that guarantees that members of a [described] language minority group are not

denied their authority to vote pursuant to 52 U.S. Code Section 10303(f)(2), and the devices or

tests described pursuant to 13 U.S. Code Section 223, which have the effect to guarantee these

24

authorizations to vote for these [described] groups need to be eliminated and that in order to satisfy the remedy, a judgment is to be entered pursuant to 42 U.S. Codes Section 1983:

**DECLARING** Petitioners' rights to vote as described as a white, caucasian American have been subject to having their right to vote taken away with the contravention of errors which apply to 52 U.S. Code Section 10303(f)(2)

**DECLARING** Pursuant to 52 United States Code Section 10303(d), the tests or devices described in this action, as they apply to 13 U.S. Code Section 223, need to be eliminated, and further

**ORDERING** enforcement of law be provided on the fundamental issues previously expressed in the action taken via special proceeding pursuant to CPLR Article 78, to provide for tenants to not be subject to conditions that would be deemed to be dangerous, hazardous, or detrimental to his or her life, health or safety, on the property they reside.

**GRANTING** such other relief as the Court may deem just and proper.

Howard Griffith, pro se

Dated: October 21, 2020

2903 James Street, # 1R
Syracuse, NY 13206
(315) 741-7420

Rebecca Sklaney, pro se

Dated: October 21, 2020

2903 James Street, # 1R
Syracuse, NY 13206
(315) 741-7420

**Verification**

STATE OF NEW YORK)
COUNTY OF ONONDAGA) ss.:

Petitioner, Howard Griffith, affirms under the penalty of perjury that the statement provided with

this Petition is true to the best of his knowledge:

Sworn to before me this _21_ day of ___Oct___, 2020

at the hour of ___2 30 pm___ on this day

Howard Griffith

NYDL 928 041351

MELISSA SCHWARTZ
Notary Public - State of New York
NO. 04SC6162309
Qualified in Onondaga County
My Commission Expires 3-12-23

Petitioner, Rebecca Sklaney, joins with the affirmation of Howard Griffith, affirming under the

penalty of perjury that the statement provided with this Petition is true to the best of her

knowledge.

Sworn to before me this _21_ day of ___oct___, 2020

at the hour of ___2 30 pm___ on this day

Rebecca Sklaney

NY DL 863036639

MELISSA SCHWARTZ
Notary Public - State of New York
NO. 04SC6162309
Qualified in Onondaga County
My Commission Expires 3-12-23

26